**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RASHIED GOODWIN, | |
| Plaintiff, | Civil No. 12-515 (FLW) |
| v. | |
| STATE OF NEW JERSEY, et al., | **OPINION** |
| Defendants. | |

**APPEARANCES**:

    RASHIED GOODWIN, Plaintiff pro se
    # 233577C/745991
    Southern State Correctional Facility
    4295 Route 47
    Delmont, New Jersey 08314

**WOLFSON**, District Judge

    Plaintiff, Rashied Goodwin, a state inmate presently confined at the Southern State Correctional Facility in Delmont, New Jersey, seeks to bring this action in forma pauperis. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it

seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed.

## I.   BACKGROUND

Plaintiff, Rashied Goodwin, brings this civil action, pursuant to 42 U.S.C. § 1983, against the following defendants: the State of New Jersey; Warden C.O. O'Neil; Deputy Warden T. Kelly; Captain J.H. Quinn; Lt. Frank Apisa and Sgt. Anthony Davia.  (Complaint, Amended Complaint, Caption and ¶¶ 4b, 4c).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

On December 31, 2011, an incident report was generated by defendants, Sgt. Davia and Lt. Apisa regarding a shakedown conducted by Davia.  At that time, the inmates on pod 2D at the Somerset County Jail became disruptive and the security of the pod was compromised.  After officers had reviewed video of the incident, Plaintiff and nineteen (19) other inmates received disciplinary charges and were placed on pre-detention hearing on December 31, 2011.  On January 2, 2012, a first hearing was held by Davila, one of the reporting officers.  A second hearing was conducted on January 4, 2012, by defendant Captain Quinn and two members of the disciplinary committee.  Plaintiff was found guilty of three of the four disciplinary charges, and was

sanctioned to 30 days in lock-up. Plaintiff claims that he was not given any appeal forms, but on January 5, 2012, he wrote to Warden O'Neil expressing his desire to appeal the case. (Compl., ¶ 6).

Plaintiff alleges that O'Neil did not respond to his appeal. However, defendant Deputy Warden Kelly did. Kelly upheld the disciplinary finding, stating that it was based on substantial evidence, and denied Plaintiff's administrative appeal. However, he reduced the disciplinary sanction from 30 days to 20 days in disciplinary detention. (Id.).

Plaintiff states that he is innocent of the charges, having been asleep in his bunk at the time, and that camera evidence and witnesses can confirm his innocence. Plaintiff asserts that his constitutional rights were violated by all of the defendants. (Id.). He seeks $200,000.00 in compensatory damages. (Compl., ¶ 7).

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a

defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v.

4

Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required."  Fed.R.Civ.P. 8(d).

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... . Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 556 U.S. at 678-79 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. Id. at 678-79; see

6

also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly. Fowler, 578 F.3d at 210. The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [556 U.S. at 678-79]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

---

[2] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

A.   Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute.  See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974).  The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought.  Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Section 1983 does not override a state's Eleventh Amendment immunity.  Quern v. Jordan, 440 U.S. 332 (1979).

Consequently, the State of New Jersey is immune from suit in this action, and the Complaint will be dismissed with prejudice as against the State of New Jersey accordingly.

B.  <u>False Disciplinary Charges</u>

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections. U.S. CONST. amend. XIV. In <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), the Supreme Court set forth the requirements of due process in prison disciplinary hearings. An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." <u>Wolff</u>, 418 U.S. at 563-71. An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings. See <u>Von Kahl</u>, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994)(citing <u>Wolff</u>, 418 U.S. at 563-72). However, in <u>Wolff</u>, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. <u>Id</u>. at 556-57; <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991).

10

Here, Plaintiff does not allege in his Complaint that he was denied the opportunity to call and question witnesses, or present documentary evidence. In fact, he does not allege any procedural due process violation with respect to his prison disciplinary proceedings, except to say that he was found guilty despite allegedly contradictory evidence, namely, a video tape of the incident, which he contends proves him innocent. Nevertheless, on appeal to the Warden/Deputy Warden, it was determined that substantial evidence existed to support the disciplinary finding.

Thus, it appears to this Court, from the allegations in the Complaint, that Plaintiff actually is challenging the disciplinary charges and findings as untrue. To the extent that Plaintiff is challenging the result of the disciplinary proceedings in alleging that the disciplinary charge is false, such claim must be dismissed. The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights. See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539, 558 (1974), then the prisoner

has not suffered a constitutional violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided").

Therefore, Plaintiff's Fourteenth Amendment claim regarding his disciplinary proceedings and alleged false disciplinary charges will be dismissed with prejudice for failure to state a claim.

C.  Due Process Claim

Finally, it would appear from the Complaint that Plaintiff is alleging that his disciplinary detention violates due process because he is actually innocent of the charges.  A liberty interest protected by the Due Process Clause may arise from either the Clause itself, or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Dep't of Corrs., 186 F.3d 407, 409 (3d Cir. 1999).

As to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Montanye v. Haymes, 427 U.S.

12

236, 242 (1976), quoted in Hewitt, 459 U.S. at 468, and Sandin v. Conner, 515 U.S. 472, 480 (1995).  Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980) (prisoner has liberty interest under Due Process Clause in freedom from involuntary transfer to mental hospital coupled with mandatory treatment for mental illness, a punishment carrying "stigmatizing consequences" and "qualitatively different" from punishment generally suffered by one convicted of a crime). "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."  Sandin, 515 U.S. at 485 (upholding sentence of 30 days disciplinary segregation after hearing at which prisoner was not permitted to produce witnesses).

   States may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions that effectively mirrored those of administrative segregation and protective custody were not "atypical and

13

significant hardships" in which a state conceivably might create liberty interest); see Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).

Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997), held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of a state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. Id. at 709. But the Griffin court noted that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, then that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. Id. at 708.

Here, Plaintiff's 20-day confinement in disciplinary detention in this case did not expose him to "atypical and significant hardship." Accordingly, the Complaint fails to state a claim for deprivation of liberty without due process.

To the extent that Plaintiff is not a convicted prisoner, but a pretrial detainee, this Court likewise finds no cognizable due process violation. Pretrial detainees cannot be subjected to

14

harsh conditions or treatments for retributive purposes.[3]  In Bell v. Wolfish, the Supreme Court found "that [pretrial] detainees, not yet convicted of the crime charged, could not be punished" and as such, "any restrictions on liberty that were reasonably related to government objectives [must] not [be] tantamount to punishment."  441 U.S. 520, 535 (1979).  The Third Circuit further elucidated the Bell standard and warned that punitive measures taken against pretrial detainees are violative of the Due Process Clause:

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose....[I]f a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

Hubbard v. Taylor, 538 F.3d 229 (3d Cir.2008).

However, the Supreme Court held that "not every disability imposed during a pretrial detention amounts to "punishment" in the constitutional sense." Id.  "If a particular condition or restriction of pretrial detention is reasonably related to a

---

[3]  The liberty interests of pretrial detainees differ from the liberty interests of inmates that have been sentenced. Fuentes v. Wagner, 206 F.3d 335, 341-2 (3d Cir. 2000). While a sentenced prisoner has a liberty interest only in remaining free from "restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin, 515 U.S. at 484, the liberty interests of pretrial detainees are subjected to a higher standard of protection.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979).

legitimate governmental objective, it does not, without more, amount to punishment." Id. 441 U.S. at 539.

For instance, the Court further explained that the government has legitimate interests that stem from its need to maintain security and order at a detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. 441 U.S. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. Id. 441 U.S. at 539 n. 20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n. 20, 561-62. See also Hubbard, 399 F.3d at 157-60, 164-67; Fuentes v. Wagner, 206 F.3d 335, 341-42 (3d Cir.), cert. denied, 531 U.S. 821 (2000).

The Court exhorted, however, that

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that"[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

Bell, 441 U.S. at 540 n. 23 (citations omitted).

In this case, Plaintiff does not allege that he was singled out for punishment. Indeed, on the face of his Complaint, he alleges that he was one of 19 other inmates receiving disciplinary charges. Moreover, his 20-day disciplinary sanction was not excessive, harsh or a grossly exaggerated response to a serious security incident. Plaintiff does not allege any other conditions of his detention that would suggest it was harsh, atypical or exaggerated under the circumstances. Thus, the totality of circumstances in this case do not show a serious deprivation or an arbitrary, purposeless, excessive restriction to suggest that Plaintiff's 20-day disciplinary detention was an unconstitutional punishment.

Therefore, this Court finds no due process violation and Plaintiff's claim will be dismissed with prejudice accordingly, for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## V.  CONCLUSION

For the reasons set forth above, Plaintiff's Complaint will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and (iii) and  1915A(b)(1) and (2). An appropriate order follows.

                                      s/Freda L. Wolfson
                                      FREDA L. WOLFSON
                                      United States District Judge

Dated: August 7, 2012